IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY THOMPSON, | ) | Case No. 1:15CV1460 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| CHARLOTTE JENKINS, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | **OF MAGISTRATE JUDGE** |

This matter is before the undersigned on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by Petitioner Johnny Thompson ("Petitioner") on July 23, 2015.  ECF Dkt. #1.  Petitioner seeks relief from his conviction and sentence for kidnapping with a sexual motivation specification, rape, gross sexual imposition, and attempted felonious assault entered by the Cuyahoga County, Ohio, Court of Common Pleas.  *Id.*  On November 12, 2015, Respondent, Charlotte Jenkins ("Respondent"), Warden of the Chillicothe Correctional Institution in Chillicothe, Ohio, where Petitioner is currently housed, filed a return of writ.  ECF Dkt. #8.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **Factual History**

The Eighth District Court of Appeals of Ohio set forth the following facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).

{¶ 2} Thompson was convicted following a jury trial. The victim, S.D., was seven years old at the time of the offense, and she knew Thompson as a friend of her mother. S.D. testified that on the day of the attack, Thompson was at her house. S.D. accompanied Thompson to McDonald's. They brought the food back home, and S.D. went back into her bedroom to eat. Later, S.D. was in her mother's bedroom watching television. Thompson and S.D.'s mother were in the living room down the hall. S.D. heard Thompson tell S.D.'s mother that he had to use the bathroom. But instead of using the bathroom, Thompson entered S.D.'s mother's room. S.D. testified that Thompson told her to pull her pants down, and when she refused, he pulled down her pants, put his hands on the inside of her pants, and put his finger in her rectum. He also hit her on the head leaving a mark on her forehead area. Shortly after the incident, Thompson left. S.D. walked into the living room, crying. S.D.'s mother asked her what was wrong, and S.D. told her what Thompson had done.

{¶ 3} S.D.'s mother testified that she had known Thompson for about thirty years and that their relationship was only sexual. On the day of the incident, Thompson came over and they sat in the living room and drank alcohol. Eventually, S.D.'s mother asked Thompson to take S.D. to McDonald's. After they returned home, S.D. went in her bedroom to eat her food, and Thompson and S.D.'s mother stayed in the living room, talking and listening to music. Thompson got up to use the bathroom. About five or six minutes later, he returned to the living room, sat down for a couple of minutes and then left.

{¶ 4} S.D.'s mother testified that after Thompson left, S.D. came into the living room trembling, with watery eyes and a strange look on her face. After hearing what S.D. told her, S.D.'s mother contacted a neighbor and then called 911. An ambulance came to take S.D. to the hospital to be examined.

{¶ 5} Nurse Kathleen Hackett testified next. Hackett is a registered sexual assault examination nurse ("SANE"), and she examined S.D. at the hospital. S.D. told Hackett about the sexual assault, explaining that she was told to pull down her pants and to bend over, and that she was touched on her butt. S.D. told Hackett that a man named "Johnny" was the perpetrator.

{¶ 6} Hackett measured S.D.'s injuries using a magnifying instrument called a colposcope. Hackett discovered a 1.8 millimeter bright red circular marking on S.D.'s hymen. Hackett determined that it is not normal to have a bright red mark on the hymen and that the injury could be consistent with a scratch. Hackett also testified that the anal and vaginal areas are in close proximity to one another and

2

that a child may not be able to differentiate between touching the anal or vaginal areas on her body. Hackett determined that the type of redness she observed would be visible only within 12 hours of the occurrence because the young child's hymen is smooth and heals rapidly. Hackett stated that her observations of S.D.'s injuries were consistent with the description of sexual assault that S.D. reported. Hackett also testified that she has conducted many sexual assault examinations where a child was penetrated in the vagina or anal cavity and there was no evidence of injury.

{¶ 7} Lindsey Pruneski, a forensic biologist with the Bureau of Criminal Investigations ("BCI") also testified. Pruneski received S.D.'s rape kit and tested for the presence of semen and amylase. Amylase is a component found in a person's bodily fluids, including saliva, blood, sweat, and urine. Amylase was found on the crotch area of S.D.'s underwear. Pruneski forwarded the underwear and other samples from the rape kit for examination by the forensic DNA unit.

{¶ 8} Lynda Eveleth is a forensic scientist with the DNA unit of the BCI. Eveleth testified that she found only S.D.'s DNA on the labial and anal swabs from the rape kit. But Eveleth found additional peaks on S.D.'s underwear sample that were inconsistent with S.D.'s DNA profile, so she sent the sample to another BCI lab for further testing.

{¶ 9} Halle Garofalo, a forensic scientist with the BCI, testified that she conducted a YSTR test on the underwear sample. YSTR is DNA testing on the Y chromosome that is present only in males. This test can ignore female DNA and examine only male DNA. After performing the test on the underwear sample, Garofalo determined that the Y chromosome was present on the underwear and that it was consistent with Thompson's Y chromosome profile. She testified that this was one of the stronger profiles that she had ever generated and that it was more likely than not to have resulted from primary contact. Primary contact is direct skin contact to an item.

{¶ 10} Detective Michael Kovach, who worked in the Sex Crimes and Child Abuse Unit on the date of the incident, testified that he was assigned to the instant case. Det. Kovach spoke to the social worker from Children and Family Services who was assigned to the case. The social worker verified to Kovach that S.D.'s disclosures to the social worker were consistent with the statement she made in the original police incident report. Kovach also testified that S.D.'s statements to him were consistent with the statements made in the police incident report.

{¶ 11} Thompson was the sole witness for the defense. He testified that he had come over to see if he could engage in sexual relations with S.D.'s mother. He did not expect that S.D. and her brother would be home from school early that day. After realizing that he would not be having sex, Thompson planned to leave, but

3

S.D.'s mother asked him to take S.D. to McDonald's to get dinner. Thompson agreed. They went to McDonald's and brought the food back. S.D. took her food to her bedroom to eat. Thompson stated that he stayed for ten minutes more and then he left the house with no problems. He testified that he never got up to go to the bathroom while in the house that day.

*State v. Thompson*, No. 99846, 2014-Ohio-1056, 2014 WL 1327664, at **1-3 (Ohio Ct. App. March 20, 2014).

B.      **Procedural History**

1.      **State Trial Court**

On June 5, 2012, the Cuyahoga County Grand Jury indicted Petitioner on the following charges:  kidnapping with a sexual motivation specification, in violation of Ohio Rev. Code § 2905.01(A)(4), a first-degree felony (Count One); rape, in violation of Ohio Rev. Code § 2907.02(A)(1)(b), a first-degree felony (Count Two); gross sexual imposition, in violation of Ohio Rev. Code § 2907.05(A)(4), a third-degree felony (Count Three); attempted felonious assault, in violation of Ohio Rev. Code §§ 2923.02 and 2903.11(A)(1), a third-degree felony (Count Four).  ECF Dkt. #8-1 at 3-4.  Petitioner entered pleas of not guilty to all charges.  *See* ECF Dkt. #1 at 3.

Petitioner's trial by a jury commenced on February 25, 2013.  ECF Dkt. #8-2 at 3.  On February 28, 2013, the jury found Petitioner guilty of all charges.  ECF Dkt. #8-1 at 5.

On April 3, 2013, the trial court sentenced Petitioner to a life sentence with eligibility for parole in fifteen years on Count Two, and twenty-four months' imprisonment on Count Four, to be served consecutively.  *Id*. at 6.  It further ordered that he pay the costs of prosecution and was a Tier III Sex Offender.  *Id*.  On April 24, 2013, the trial court issued a *nunc pro tunc* entry that corrected the sentencing entry to show that Counts One, Two and Three were merged for

4

sentencing purposes.  *Id*. at 8.

## 2. <u>Direct Appeal</u>

Petitioner, through newly appointed counsel, filed a timely notice of appeal.  *Id*. at 10. Petitioner then moved to replace appointed counsel with retained counsel, which the court granted.  *Id*. at 13-15.  In his appellate brief, Petitioner asserted the following assignments of error:

1.  The trial court erred when it allowed the State to introduce a portion of minor child's medical records in order to show an injury unrelated to a rape charge which unduly prejudiced the Appellant and violated his right to due process of law.

2.  The trial court erred and in allowing the SANE nurse to opine that the vaginal injury could have occurred through unlawful sexual conduct through attempted anal penetration in violation of Rules 702 and 703 of the Ohio Rules of Evidence and in violation of Appellant's due process rights.

3.  The trial court erred when it denied the Appellant's Rule 29 motion for judgment of acquittal on the charge of attempted felonious assault.

4.  The defense counsel for the Appellant failed to provide effective assistance of counsel for his failure to object to the admission of purported out of court hearsay statements made by the minor child but testified to by victim's mother.

5.  The trial court erred when it allowed the State to introduce a portion of medical records showing an injury unrelated to a rape charge, and unduly prejudiced the Appellant and violated his right to due process of law.

*Id*. at 17-18.  On March 20, 2014, the Eighth District Court of Appeals affirmed Petitioner's convictions in part, modified it in part and remanded.  *Thompson*, 2014 WL 1327664, at *8; ECF Dkt. #8-1 at 77.  The court modified the trial court's judgment to reduce the conviction for attempted felonious assault under Ohio Rev. Code § 2923.02 and § 2903.11(A)(1) to a violation for simple assault under Ohio Rev. Code § 2903.13(A), and remanded for the limited purpose of sentencing consistent with the conviction as modified.  *Id*.  It affirmed the trial court's judgment

in all other respects.  *Id*.

On May 2, 2014, through the same appellate counsel, Petitioner filed a timely notice of appeal in the Ohio Supreme Court.  *Id*. at 80.  In his memorandum in support of jurisdiction, he asserted the following three propositions of law:

1. The Court should not allow the State to introduce a portion of minor child's medical records in order to show an injury unrelated to a rape charge which unduly prejudices the Appellant and violates his right to due process of law.

2. The Court should prohibit a Sane nurse to opine that a vaginal injury could have occurred through unlawful sexual conduct through attempted anal penetration in violation of Rules 702 and 703 of the Ohio Rules of Evidence and in violation of Appellant's due process rights.

3. The Court must find counsel did not provide effective assistance of counsel when his counsel failed to object to the admission of purported out of court hearsay statements made by the minor child but testified to by victim's mother.

*Id*. at 83.  The Ohio Supreme Court declined to accept jurisdiction on July 23, 2014.  *Id*. at 115.

### 3.     Resentencing

On April 24, 2014, the trial court held a hearing and resentenced Petitioner to life in prison with the possibility of parole after fifteen years on Count Two, and six months' imprisonment on Count Four, to be served concurrently.  *Id*. at 116.  It further ordered that he was a Tier III Sex Offender.  *Id*.  On July 15, 2014, and September 5, 2014, the trial court issued *nunc pro tunc* entries that corrected the resentencing entry to show that Counts One, Two and Three were merged for sentencing purposes.  *Id*. at 118, 120.

## II.     FEDERAL HABEAS CORPUS PETITION

Petitioner filed, through counsel, a § 2254 federal habeas corpus petition on July 23, 2015.  ECF Dkt. #1.  He asserts the following three grounds for relief:

1. The Petitioner did not receive effective assistance of counsel under the Sixth

Amendment, when his counsel failed to object to the admission of hearsay statements made by minor child, thus resulting in the violation of his right of confrontation.

2.  The Petitioner's right to due process of law was violated when the State was allowed to admit medical records of an unrelated injury to prove the anal rape of a minor child.

3.  The Petitioner's due process rights were violated when a SANE nurse was permitted to opine that the vaginal injury could have occurred through unlawful sexual conduct through attempted anal penetration in violation of Rules 702 [and] 703, Ohio Rules of Evidence.

*Id*. at 15, 20, 22.

On November 12, 2015, Respondent filed an answer/return of writ.  ECF Dkt. #8.

## III.  **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1). Respondent does not challenge the timeliness of Petitioner's habeas petition.

### B.  **Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no

7

remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by:  (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

8

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218–19 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district

court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.  *Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default

10

and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

## IV.  **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998). Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

11

> (1) resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id*.  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*.; *see also Bailey v. Mitchell*, 271 F.3d 652, 655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A.  Decisions of lower federal courts may not be considered.

B.  Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.      The state court decision may be overturned only if:

      1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or

      2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or

      3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or

      4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption

13

of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine*, 986 F.2d at 1514.  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), cert. denied, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.     ANALYSIS

### A.     Petitioner's First Ground for Relief:  *Ineffective Assistance of Counsel*

In his first ground for relief, Petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel failed to object to the admission of hearsay evidence at trial.  ECF Dkt. #1 at 15-20.  Specifically, he complains that counsel should have objected when the victim's mother recounted at trial what her daughter told her right after the sexual assault occurred in the following testimony:

Q.     And what does she say?

A.     She described to me what had happened to her and was telling me what went on.  And she said he didn't really go to the bathroom.  She said he came in your room.  She had left her game and started watching TV.  She said he didn't really go to the bathroom.  She described to me what he did.

14

Q.      What did she describe to you?

A.      he pulled down, came in there and pulled down her pants, told her to bend over and like pushed her head down.  And then when she wouldn't do it, she said no, he grabbed her around the neck in a hold and then hit her in the head.

Q.      Did he do anything else to her?

A.      He put his finger in her behind is what she said.

*Id*. at 15-18 (quoting ECF Dkt. #8-3 at 45-46).

Petitioner raised this claim on direct appeal in state court, where it was adjudicated on the merits.  *Thompson*, 2014 WL 1327664, at **5-6.  Respondent argues this claim lacks merit.  ECF Dkt. #8 at 14-17.[1]

The Supreme Court long has recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012).  *See also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963).  The Supreme Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment."  *Id* at 687.  Second, the petitioner must show that he or she was prejudiced by counsel's errors.  To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

---

[1]  Respondent further argues that Petitioner has procedurally defaulted the underlying evidentiary claim regarding the admission of the victim's testimony because he did not independently raise it in state court.  ECF Dkt. #8 at 15-16.  The undersigned finds this point irrelevant, however, as Petitioner has not raised that evidentiary claim here.

15

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at 689-90).  The Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

Regarding trial counsel's obligation to object at trial, the Sixth Circuit has noted:

Because of the "numerous potentially objectionable events" that occur throughout trial, we have previously noted that "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."

*Hodge v. Haeberlin*, 579 F.3d 627, 648 (6th Cir. 2009) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)).

The state appellate court, the last state court to address Petitioner's ineffective-assistance claim, reasoned:

{¶ 27} In his fourth assignment of error, Thompson argues that his defense counsel provided ineffective assistance by failing to object to the admission of out of court hearsay statements made by S.D. but testified to by S.D.'s mother. We conclude that, even if Thompson's trial counsel was deficient, Thompson suffered no prejudice from this deficiency. Accordingly, we overrule the assignment of error.

{¶ 28} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate ineffective assistance of counsel, a defendant must satisfy both parts of a two-prong test. *Id*. at 687. The first prong requires that the defendant show that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Id*.

16

{¶ 29} Under the second prong, the defendant must establish that counsel's "deficient performance prejudiced the defense." *Id.* We determine prejudice by analyzing whether "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Reasonable probability" is defined as probability sufficient to undermine confidence in the outcome. *Id.* The failure to prove either prong of the *Strickland* test is fatal to a claim of ineffective assistance. *Id.* at 697.

{¶ 30} Thompson argues that his trial counsel was deficient in failing to object to the portion of the mother's testimony concerning what S.D. had told her following the attack. According to Thompson, the mother's testimony was inadmissible hearsay under Evid.R. 801. Hearsay is "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The state argues that this portion of the mother's testimony was admissible under the excited utterance exception.

{¶ 31} We need not resolve this debate, because even if the testimony was inadmissible hearsay, and even if Thompson's trial counsel was deficient in failing to object to the testimony, Thompson was not prejudiced by the deficiency. "The main premise behind the hearsay rule is that the adverse party is not afforded the opportunity to cross-examine the declarant." *Primeau*, 8th Dist. Cuyahoga No. 97901, 2012–Ohio–5172, ¶ 69. In *Primeau*, we found harmless error where the defense had the opportunity to cross-examine the declarant. *Id.* Similarly, in the instant case, S.D. testified and was subject to cross-examination.

{¶ 32} Furthermore, even without this portion of the mother's testimony, there was ample other evidence supporting Thompson's conviction, including S.D.'s testimony, the remaining non-hearsay testimony from the mother, Hackett's testimony, Det. Kovach's testimony, the medical report, and the DNA evidence. Accordingly, we cannot say that there is a reasonable probability that but for counsel's error, the result of the proceeding would have been different. Accordingly, we overrule the assignment of error.

*Thompson*, 2014 WL 1327664, at **5-6.

Petitioner argues that the state appellate court misapplied *Strickland* because, "given the stark differences in the testimony of the Detective and the [victim's] statements generated in the police report, it would have affected the outcome" of the trial.  ECF Dkt. #1 at 20.  The undersigned disagrees.

17

The state court first found that even if the testimony at issue were hearsay and defense counsel were deficient for failing to object to it, under Ohio law, it would be harmless error because defense counsel had the opportunity to cross-examine the declarant, the victim, about her version of the events. *Thompson*, 2014 WL 1327664, at *6 (citing *State v. Primeau*, No. 97901, 2012-Ohio-5172, ¶69). As will be explained in greater detail below, to the extent that Petitioner challenges the court's interpretation of Ohio evidentiary law, that claim is not cognizable in federal habeas review. *See, e.g., Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) ("alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review"). In any event, the state appellate court correctly concluded that even if defense counsel had objected to the mother's testimony about her daughter's account of the assault, and the trial court had sustained the objection, the result of the trial would not have been different, as required under *Strickland*'s prejudice prong. *Thompson*, 2014 WL 1327664, at *6.

As the state court noted, defense counsel was able to cross-examine the victim about the differences between her initial account of the assault she gave to police and her trial testimony, which he did at some length. *See, e.g.*, ECF Dkt. #8-3 at 6-11. For example, defense counsel asked the victim:

> Q. Okay. Now, when you said that Johnny slapped you, how many times did he slap you?
>
> A. One.
>
> Q: Once. You never told the police he slapped you eight times?
>
> A. I don't remember that.
>
> Q. You don't remember that?
>
> A. Okay.

18

*Id*. at 9.  Counsel further questioned the victim:

> Q.    Okay.  But, I want to make it very clear here, . . . you're telling us about
> when you first were interviewed by the police and the nurses or whoever
> you talked to, you told them it happened in the hallway, didn't you?  You
> never said it happened in the bedroom to anybody until you were in court
> here today, did you?
> . . .
>
> Q.    You never told anybody about this happening in the bedroom until today?
>
> A.    It did happen in the bedroom.
>
> Q.    It did?  But, you never told anybody that, did you?
>
> A.    It was both places.

*Id*. at 14.

Defense counsel also questioned several other witnesses about the discrepancies between

the victim's statement to police and testimony at trial.  He questioned the police detective who

interviewed the victim and wrote about her description of the incident in a police report.  ECF

Dkt. #8-4 at 18-20.  The detective testified:

> A.    I had [her] show me – I talked to her by herself.  She told me what
> happened.  I said, can you show me where exactly you were when this
> happened.  She did.  So, she said she was standing here, in front of the
> bathroom door and mom was on this end of the couch.
> . . .
>
> Q.    There where she said this happened, right, in her testimony?
>
> A.    No.  She said it happened in mom's room.
>
> Q.    Oh, in mom's room.  But, you learned from your investigation that day,
> she said it had happened right here in the hallway, right?
>
> A.    That's correct.
>
> Q.    That's what she told you?

19

A.     Yes.

Q.     Never learned anything different, did you?

A.     No.

Q.     Matter of fact, you never heard that it had happened in the bedroom till you were sitting in this courtroom the other day, did you?

A.     That's correct.

Q.     And you even thought it was so important that you made a note in your police report how far away this couch was from here; did you not?

A.     That's correct.

*Id*. at 18-19.   Defense also counsel cross-examined the victim's mother about the discrepancies in the victim's stories.  *See* ECF Dkt. #8-3 at 86-87.

Thus, Defense counsel was able to question key witnesses about the victim's inconsistent stories, and the jury was able to weigh all of the evidence and assess the victim's credibility. Petitioner cannot demonstrate that if his counsel had objected to the victim's mother's testimony about her daughter's contemporaneous description of the assault, the jury would have acquitted him.

The state court also reasonably concluded that Petitioner could not demonstrate prejudice because there was "ample other evidence supporting [his] conviction, including [the victim's] testimony, the remaining non-hearsay testimony from the mother, Hackett's testimony, Det. Kovach's testimony, the medical report, and the DNA evidence."  *Thompson*, 2014 WL 1692753, at 6.

Accordingly, Petitioner has not shown that counsel's failure to object to the challenged testimony of the victim's mother so prejudiced him that but for that omission, the result of his

20

trial would have been different.  *Strickland,* 466 U.S. at 694.  And without proving prejudice, Petitioner cannot prevail on his ineffective-assistance claim – regardless of whether his counsel was deficient or not.  *Id.* at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice  suffered").  The state appellate court did not misapply *Strickland* and its progeny in denying this claim, and the undersigned recommends that it be dismissed.

> **B.**    **Petitioner's Third Ground for Relief:  *Trial-Court Error / Evidentiary Ruling Regarding SANE Nurse's Testimony***

In Petitioner's third ground for relief, he contends that the trial court erred by allowing Kathleen Hackett, a sexual assault nurse examiner ("SANE") who examined the victim, to render expert testimony about the victim's injuries in violation of the Ohio Rules of Evidence and his due process rights.  ECF Dkt. #1 at 22-23.

Petitioner raised this claim in state courts.  The state appellate court, the last state court to address the claim, opined:

> {¶ 14} In his second assignment of error, Thompson argues that the trial court erred in allowing the SANE nurse, Hackett, to offer opinions about S.D.'s injuries. Thompson asserts that the evidence was expert opinion evidence that did not comply with the requirements found in Evid.R. 702 and 703. We disagree.

> {¶ 15} " 'A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion.' " *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012–Ohio–5172, ¶ 57, quoting *Scott v. Yates*, 71 Ohio St.3d 219, 221, 643 N.E.2d 105 (1994). An expert witness is one who "possess[es] knowledge in the relevant subject area that is superior to an ordinary person." *Id.* The witness may be " 'qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." *Id.*, quoting Evid.R. 702(A) and (B).

> {¶ 16} In State v. Primeau, we found no error where a SANE nurse with similar qualifications to Hackett's offered similar testimony in a case involving domestic violence and sexual assault. *Id.* at ¶ 59. In Primeau, as in the instant case, the

nurse was not declared an expert on the record. *See id.* at ¶ 58, citing *State v. Skinner*, 2d Dist. Montgomery No. 11704, 1990 Ohio App. LEXIS 4178 (Sept. 26, 1990) ("[S]o long as the record indicates that the trial court did not abuse its discretion, we will not disturb a decision to allow a witness to offer expert opinion testimony simply because 'magic' words do not appear on the face of the record."). We concluded that the nurse's "testimony was within the scope of her expertise because she is a trained medical professional whose qualifications are in areas of domestic violence injuries and sexual assault." *Id.*

{¶ 17} Similarly, in the instant case, Hackett testified that she had worked for Rainbow Babies and Children's Hospital for two and a half years, and that she had worked as a clinical nurse for over thirty years. Hackett had performed over 120 exams of children where sexual abuse was reported. She also outlined the extensive training that she underwent in order to become a SANE nurse. We find no error in allowing Hackett to offer expert testimony.

{¶ 18} Thompson also argues that the trial court erred in permitting Hackett to testify that S.D.'s vaginal injuries were consistent with her having been anally penetrated, due to the size of a man's hands and the small distance between the anal and vaginal area of a seven-year-old child. According to Thompson, Hackett was not permitted to testify as such without first measuring Thompson's hands and measuring S.D.'s vaginal and anal areas. Essentially, Thompson is arguing that Hackett's testimony did not comport with Evid.R. 702(C) and 703. Evid.R. 702(C) requires that the expert "witness' testimony is based on reliable scientific, technical, or other specialized information * * *." Under Evid.R. 703 "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶ 19} These rules do not require that Hackett conduct the kind of measurements suggested by Thompson. Hackett was basing her testimony on "specialized information" that she had acquired from conducting more than 120 exams of children where sexual abuse was reported. Hackett's opinion was based on facts and data that she perceived during the course of her examination of S.D. and on her past experiences examining other children.

{¶ 20} Thompson also argues that Hackett could not render her testimony because she had no information or statements from S.D. that the vaginal injury was caused by Thompson's using his finger to enter her vaginally. But the point of Hackett's testimony was that the type of vaginal injury that was discovered could be consistent with the type of sexual assault reported by S.D. Accordingly, this argument is nonsensical.

{¶ 21} Hackett's testimony comported with Evid.R. 702 and 703. Accordingly, the trial court did not err in allowing Hackett to testify and we overrule the

assignment of error.

*Thompson*, 2014 WL 1327664, at **3-5.

To support his claim, Petitioner essentially repeats the arguments here that he asserted in state court.  ECF Dkt. #1 at 22-23.  Respondent counters that, to the extent this claim alleges state-law violations, it is not cognizable on federal habeas review.  ECF Dkt. #8 at 20-21.  She further asserts that the state court "rejected Thompson's Due Process Claim and Thompson has not established that the state appellate court's decision is contrary to, or an unreasonable application of clearly established Supreme Court precedent."  *Id*. at 21.

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241).  *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Generally, therefore, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).  Habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings.  *Small v. Brigano*, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005.)  Nevertheless, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

23

2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  They must be "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  But "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'"  *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

Thus, to the extent that Petitioner alleges state-law violations, his claim is not cognizable. The only issue here, therefore, is whether the challenged ruling resulted in a denial of fundamental fairness.  It did not.  Beyond one cursory reference in a heading to his "due process rights," Petitioner cites only Ohio evidentiary law to support his arguments, which the state court aptly addressed – applying Ohio law.  Petitioner does not advance any argument as to how the state appellate court's decision violated fundamental fairness or any other federal constitutional principle, and the undersigned can find none.  This claim is meritless, and the undersigned recommends that it be dismissed.

### C. Petitioner's Second Ground for Relief: *Trial-Court Error / Evidentiary Ruling Regarding Victim's Medical Records*

Petitioner makes a related argument in his second ground for relief, claiming the trial court erred when it permitted the State to introduce medical records reporting redness in the victim's vaginal area, which he alleges was caused by "an unrelated injury."  ECF Dkt. #1 at 20-21.  He contends the evidence was irrelevant, as "there was no testimony evidence introduced in the case that the minor child was raped vaginally," and unfairly prejudicial, violating Ohio Rules of Evidence 401 and 403 and his due process rights.  *Id.*

Petitioner raised this claim in state courts.  The state appellate court reasoned:

{¶ 22} Because Thompson's first and fifth assignment of error raise the same argument, we consider them together. Thompson asserts that the trial court erred in allowing the state to introduce a portion of S.D.'s medical records. According to

Thompson, these medical records were inadmissible under Evid.R. 401 and 403 because they were not relevant to any of the charges against him and they were unfairly prejudicial.

{¶ 23} A trial court has broad discretion in rendering evidentiary rulings and we will not reverse such a ruling absent an abuse of discretion resulting in prejudicial error. *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013–Ohio–1548, ¶ 12.

{¶ 24} Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. " 'Generally speaking, the question of whether evidence is relevant is ordinarily not one of law but rather one which the trial court can resolve based on common experience and logic.' " *State v. Ford,* 8th Dist. Cuyahoga No. 90834, 2008–Ohio–5471, ¶ 28, quoting *State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989).

{¶ 25} Thompson argues that the portion of the medical records indicating redness in S.D.'s vaginal area was not relevant to the question of whether S.D. was anally raped. As discussed earlier, Hackett testified that the vaginal injuries set forth in the medical record were consistent with a fingernail scraping or touching around S.D.'s vaginal area. Further, Hackett testified that due to the small structure of a seven-year-old child, the vagina and anus are in close proximity, meaning such an injury could be sustained if a man stuck his hands into a child's vaginal—buttock region. For these reasons, the trial court could logically determine that this portion of the medical records was relevant to the question of whether Thompson anally raped S.D. using his finger.

{¶ 26} Thompson also argues that, even if relevant, this evidence was still inadmissible because it violated Evid.R. 403. Under this rule, evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Again, Thompson relies on his assertion that vaginal redness is not probative of whether S.D. was anally raped, and so such evidence must be unfairly prejudicial. As we have just explained, Hackett testified that the injury in the medical record could be connected to the anal rape charge. Accordingly, the evidence was probative, and was not unfairly prejudicial. We overrule the assignments of error.

*Thompson*, 2014 WL 1692753, at *5.

Again, to the extent Petitioner alleges errors of  state law, this claim is not cognizable on

federal habeas review.  Moreover, as the state court reasonably concluded, the trial court did not

err in admitting the challenged medical records.  Hackett's testimony established that they were

relevant to the question of whether Petitioner anally raped the victim using his finger, and their probative value outweighed any danger of unfair prejudice.  Petitioner has not shown that there was an error of state law in admitting this evidence, much less an error so grievous that it undermined the fundamental fairness of his trial, and the undersigned recommends that this claim also be dismissed.

**VI.      CONCLUSION AND RECOMMENDATION**

For the above reasons, the undersigned recommends that the Court dismiss Petitioner's federal habeas corpus petition in its entirety with prejudice.


Date: October 21, 2016

_____/s/George J. Limbert_____
George J. Limbert
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).